06-20412.opi

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20412 CIV- COOKE/BROWN

CONSOLIDATED

B&M NATIONAL AUTOMATION, LLC,

    Plaintiff,

vs.

AMX CORPORATION,

    Defendant.
_____/

AMX LLC, a Delaware Limited Company,

    Plaintiff,

vs.

AVEX GROUP, INC., et al.,

    Defendants.
_____/

## ORDER RE: MOTION FOR INJUNCTIVE RELIEF

**This matter** is before this Court on Cimax USA, LLC.'s (hereinafter referred to as the plaintiff) Motion for Temporary Injunctive Relief..., filed June 9, 2006.[1] The Court has considered the motion, the response, the reply, and all pertinent materials in the file. An evidentiary hearing was held on October 3-6, 2006, and argument of counsel considered.

---

[1] The motion was filed by plaintiff B&M National Automation, LLC ("B&M") and intervenor Cimax. At the hearing it was announced that B&M was not proceeding with its request for relief.

1

Plaintiff seeks three forms of relief: (1) to have this Court require AMX to provide product to plaintiff for an existing contract; (2) to enjoin AMX from having contact with, or doing business with, plaintiff's protected list of customers; and (3) to enjoin AMX from using press releases or other means to disparage plaintiff by broadcasting and discussing the pending lawsuit between the parties.

## I. Requirements for Injunctive Relief

In order to be entitled to injunctive relief, the moving party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the moving party outweighs the harm an injunction may cause the non-moving party; and (4) that the injunction would not disserve the public interest. See e.g. American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998). A preliminary injunction is an extraordinary remedy that should only be granted when the movant has made a clear showing of its burden of proof. McDonald's Corp. v. Robertson, 147 F. 3d 1301, 1306 (11th Cir. 1998); Café 207 v. St. Johns County, 989 F.2d 1136, 1137 (11th Cir. 1993). Furthermore, when a plaintiff seeks to modify the status quo, as opposed to maintain it, courts have required the plaintiff to make "a stronger showing of likelihood of success." See Cupolo v. Bay Area Rapid Transit, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997). Finally, these elements are also applicable to the claims under Florida law. See, e.g., Broward County v. Meiklejohn, 936 So.2d 742, 746 (Fla. 4th DCA 2006). The following statements and rulings are applicable to this motion, and this motion only.

## II. Discussion

With respect to substantial likelihood of success on the merits, the Court need only resolve the issue as to requested relief (2), since the Court finds, for the reasons which follow, that plaintiff has failed to meet its burden of showing irreparable harm as to requested relief (1) and (3).

2

Plaintiff has a "catch-22" corporate problem. There are two defendant corporations intimately involved in this matter: B & M, and Cimax. They have been referred to at various times in this proceeding as one and the same, and at other times as two separate corporations. While plaintiff's counsel said in closing argument that they would really be one and the same "if defendant (AMX) attempted to pierce the corporate veil," counsel misses the point - it is actually the plaintiff seeking to pierce the corporate veil ...when convenient to do so. For example, plaintiff relies heavily on Exhibit 1 - the Confidentiality Agreement ("C.A.") - to claim a breach of same by AMX in "stealing trade secrets ... its customers." While there is a dispute about the effect of subsequent documents, a purported ambiguity, and other disagreements, three facts stand out: (1) the C.A. is between AMX and Cimax; (2) the "backbone" of the alleged trade secret customer list is contained in Exhibit 10; and (3) Cimax does not appear anywhere in Exhibit 10 as the source of those purported customers.

There are further complications that stand in the way of plaintiff's requested relief. In 2001, a Dealer Agreement was entered into between Panja (the predecessor to AMX), and AVEX Group Inc. (the predecessor to Cimax) (Ex. 9). That agreement is relevant because: (1) Panja retains the right to deal with customers directly (see paragraph 1.2); (2) and paragraph 15.1. states that this is the entire agreement between the parties "pertaining to the subject matter of this agreement." What the "subject matter of this agreement" encompasses is not crystal clear, but it is the document that governs the dealer relationship.

In August, 2004, a Manufacturers Representative Agreement (Ex. 8) was entered into between AMX and B & M. That agreement specifically acknowledges the prior Dealer Agreement (see paragraph 2) and states it is in "full force and effect." In addition, paragraph 9 of this agreement is entitled, and addresses "Confidentiality" ... albeit only as it pertains to protection of AMX. Finally,

and most importantly, this document contains paragraph 17, entitled "Entire Agreement." It states, in pertinent part "[T]his Agreement ... embodies the entire agreement and understanding of the parties hereto, and supercedes and preempts all other prior written and oral agreements ... with respect to the subject matter hereof, which shall hereafter be without further force and effect." Without reiterating the questions surrounding this language, these documents raise additional questions about the survivorship of the document plaintiff seeks to rely on. Thus, as to requested relief (2), the Court finds that plaintiff has not succeeded in meeting its very high burden of showing a substantial likelihood of success on the merits.

With respect to the other requests, "[a] showing of irreparable injury is 'the sine qua non of injunctive relief'." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). In order to show irreparable harm or injury plaintiff must show that the claimed injury is "neither remote nor speculative, but actual and imminent." See Northeastern Fla. Chapter of Assoc. Of Gen. Contractors of America v. City of Jacksonville, 896 F. 2d 1283,1285 (11th Cir. 1990). It bears noting that "[c]onjecture about a possibility of difficulties with damage computations is inadequate to support an injunction before trial." Id. at 1286.

Plaintiff Pedro Moreira, president of B&M, testified that Scott Norder, the executive Vice-President of AMX, visited him and orally promised to supply product for those contracts in existence prior thereto ... at the same visit where, upon leaving, Norder handed Moreira the letter terminating Cimax's contract. (Ex. 4). Assuming, without so deciding, there was some sort of promise made, requested relief (1) is without precedent. It would require this Court to, in effect, create a contract between two entities, including but not limited to: (1) the terms of the contract - who would do what and to whom; (2) the timing of same; (3) the remedies for a breach of same; (4) the terms of

performance, delivery, and payment, etc. etc. Furthermore, there is evidence in this record that plaintiff has three hurdles it cannot overcome: (1) it can make a claim in damages for the breach of the alleged promise; (2) it can go to authorized dealers for the product[2], and (3) it could have ordered the product while it was still permitted to, but didn't. It should be noted that there is no evidence that plaintiff made any effort to get product from an authorized dealer, much less that any authorized dealer refused to supply same.

The general rule in Florida is that injunctive relief for what is, in effect, specific performance of a contract is not available for contracts involving personal property, particularly where, as in this situation, the court would have to supervise the performance. See, e.g., Mayor's Jewelers, Inc. v. State of Cal. Public Employees Retirement Sustem, Inc., 685 So. 2d 904, 905 (Fla. 4th DCA 1996). Plaintiff attempts to point out an exception to this rule, citing Wilson v. Sandstrom, 317 So. 2d 732 (Fla. 1975), cert. denied, Alder v. Sandstrom, 423 U.S. 1053 (1976).[3] However, there are numerous distinctions between that case and the instant one.

Initially, the court noted that there had to be a "clear legal right" to said injunction. Id at 737. The court further found that in order to grant injunctive relief for an alleged breach of contract, which is what plaintiff is claiming, "the contract must be certain and unambiguous in its terms." Id at 739. This is hardly the fact pattern in this matter. Viewed in a light most favorable to plaintiff, there was an oral promise to "supply product." This can hardly be found to be a "certain" contract with unambiguous terms. Finally, the court in Wilson found the "product" at issue (greyhound dogs) to

---

[2] There is no evidence in this record - other than the self-serving statement of Mr. Moreira - that authorized dealers refuse to deal with plaintiff.

[3] This case is erroneously cited in plaintiff's reply brief at page 7.

be a unique product. Thus far, there is no evidence of a similar uniqueness in this case. In fact, quite to the contrary, there is uncontroverted evidence of the competition between AMX and others for the same or similar products.

With regard to requested relief (3), the Court has noted its displeasure with AMX for what has previously transpired. There is uncontroverted evidence that steps were taken to "tone down" the messages disseminated, which may or may not have actually occurred. However, once again, there is no real evidence that any damage has been done to plaintiff by these mailings - other than, once again, self serving statements.

Plaintiff produced Ron Mastriana, a Broward County developer, who testified that he received e-mails from AMX and that he has some reservations about future dealings with plaintiff. But what was clear from his testimony was that it was not the contents of these e-mails that concerned him, but rather the existence of the litigation between the parties. Mr. Mastriana is also a real estate attorney and clearly knows the difference between allegations and facts. He also knows, and testified to, the costs involved in litigation. It was the latter that concerned him, not the former. This Court is aware of the First Amendment to the United States Constitution. To prohibit AMX from telling people of the existence of this litigation - which is all, really, that the Press Release did - would violate said Amendment. Viewed in a light most favorable to plaintiff, the filing of the litigation and the perception of the inherent costs therein are of concern. Can or should the Court then enjoin entities from filing lawsuits against others when the mere filing of the litigation can have significantly negative results? This Court answers that question in the negative.

In sum, Plaintiff's proof consisted mainly of self serving statements by Mr. Moreira and George Fallica, plaintiff's Director of Operations. Such statements have been found to be insufficient

support for injunctive relief. See, e.g., Citizens for a Better Environment, Inc. v. Nassau County, 488 F.2d 1353, 1363 (2d Cir. 1973); Thorn v. Smith, No. 4:CV-06-0016, 2006 WL 1455746 (M.D. Pa. May 23, 2006); Unisource Worldwide v. South Central Ala. Supply, 199 F. Supp. 2d 1194, 1206 (M.D. Ala. 2001) (citing E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1534 (11th Cir. 1985)); Planned Parenthood of Wisconsin v. Doyle, 9 F. Supp. 2d 1033, 1039-40 (W.D. Wis. 1998), rev'd on other grounds, 162 F.3d 463(7th Cir. 1998); Hadges v. Corbisiero, 739 F. Supp. 792, 795 (S.D.N.Y. 1989).

Another factor the Court must consider is the purported delay in bringing this claim. This lawsuit was originally filed in state court in early January, 2006. The first attempt to seek injunctive relief was not filed until June, 2006. A review of the complaint and the file in this case reflects that the only relief sought that would not be subject to the delay factor is the use of the press releases and e-mails, but for the fact that Cimax as the intervenor, filed a complaint in this case in May, 2006.

In Kaisha v. Swiss Watch International, Inc., 188 F. Supp. 2d 1350 (S.D. Fla. 2002), the Honorable Joan A. Lenard stated that "a plaintiff's delay in seeking an injunction in a trademark case 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.'" Id. at 1135-36 (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)). Although Kaisha was a trademark case, the same logic has been applied by other courts in non-trademark cases. See Quince Orchard Valley Citizens Assoc., Inc. v. Hodel, 872 F.2d 75 (4th Cir. 1989) (concerning injunction to prevent construction of four-lane highway through state park); Lydo Enterprises v. City of Las Vegas, 745 F.2d 1211, 1213-14 (9th Cir. 1984) (concerning injunction from enforcing zoning ordinance); Warranty Corp., Inc. v. Hans, No. CIV. A .98-0889-MJ-S, 2000 WL 284261 (S.D. Ala.

7

March 9, 2000) (concerning request for injunctive relief based on breach of confidentiality agreement); see also Kansas Health Care Assn. v. Kansas Dept. of Social and Rehabilitative Svcs., 31 F.3d 1536, 1543-44 (10th Cir. 1994); but see Dow Jones & Co., Inc. v. Kaye, 90 F. Supp. 2d 1347, 1362 (S.D. Fla. 2000), order vacated, appeal dismissed, 256 F.3d 1251 (11th Cir. 2001). (Jordan, J.) (finding that rationale does not apply in the context of an alleged First Amendment violation where "each passing day may constitute a separate and cognizable infringement on the First Amendment.") (citation omitted)). Again, the latter would, viewed in a light most favorable to plaintiff, only apply to the press release/e-mail issue. If Cimax and B & M are really one and the same, Cimax's filing in May would be irrelevant since B &M filed this case long before. However, if they are, indeed, two separate corporate entities and Cimax is the one seeking injunctive relief herein, no delay claim is appropriate ... but then we are back to the "catch -22" once again.

Thus, this Court need not reach the question of the "substantial likelihood of success on the merits" to find that requested relief (1) and (3) should not be granted, and finds that plaintiff has not met the very difficult burden necessary to succeed on requested relief (2).

Therefore, for the reasons stated herein, plaintiff's Motion for Temporary Injunctive Relief is **DENIED**.

**DONE AND ORDERED** this 23rd day of October 2006, at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE